UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| MICHAEL KING, | Case No. 2:25-cv-592 |
| Plaintiff, | |
| vs. | District Judge Algenon L. Marbley |
| | Magistrate Judge Peter B. Silvain, Jr. |
| AARON LINDSEY, *et al.*, | |
| Defendants. | |

**ORDER and
REPORT AND RECOMMENDATION[1]**

Michael King, an Ohio prisoner proceeding *in forma pauperis* and without the assistance of counsel, has filed a civil rights complaint with this Court pursuant to 42 U.S.C. § 1983. (Doc. #1-2). This matter is before the undersigned for an initial screening of the Complaint as required by law. 28 U.S.C. § 1915(A)(a); 28 U.S.C. § 1915(e)(2).

For the reasons that follow, the undersigned concludes that Plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims against Defendant Lindsey may **PROCEED** to further development. The undersigned **RECOMMENDS** that the remaining claims be **DISMISSED**.

**I.   INITIAL SCREENING STANDARD**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed

---
[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(2)[2] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> * * *
>
> (B) the action or appeal –
>
> (i)  is frivolous or malicious;
>
> (ii)  fails to state a claim on which relief may be granted; or
>
> (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. See also § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

---

[2] Formerly 28 U.S.C. § 1915(d).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II. PARTIES AND CLAIMS

Plaintiff Michael King is a prisoner in the custody of the Ohio Department of Rehabilitation and Correction (ODRC). He is currently incarcerated at the Trumbull Correctional Institution (TCI) in Leavittsburg, Ohio, but most of the factual allegations forming the basis of his Complaint are alleged to have occurred during his incarceration at the Chillicothe Correctional Institution

3

(CCI) in Chillicothe, Ohio. Plaintiff raises claims of retaliation, denial of due process and equal protection, and defamation. (Doc. #1-2, *PageID* #17). He sues six Defendants, all of whom are affiliated with ODRC, CCI, and/or TCI:

1. Aaron Lindsey, Investigator at CCI;

2. Steve Barnes, Rules Infraction Board (RIB) chairperson at CCI;

3. Brad Wise, Director of Recovery Services at TCI;

4. V. Brown, Office of Chief Legal Counsel;

5. C. Roush, RIB member two at CCI; and

6. John Doe, Investigator at CCI

*Id*. at 12-13. Defendants are sued in their individual and official capacities. *Id*.

Plaintiff alleges that on December 27, 2024, Defendant Lindsey, an investigator at CCI, approached him about becoming a confidential informant to provide information about drug activity in the prison yard. *Id*. at 13. Defendant John Doe was present. Plaintiff declined the offer, stating he is "not a snitch." *Id*. Plaintiff further alleges that during this interaction, Defendant Lindsey made racially derogatory comments to him. *Id*. Plaintiff informed Defendants Lindsey and Doe that he intended to file a grievance for discrimination and harassment, "at which point Lindsey told Plaintiff that he would have 'to make something up on you if you're not going to cooperate because I can't have you return to the compound now or file a grievance on us.'" *Id*.

Plaintiff alleges Defendant Lindsey sent him to segregation that same day, where he was housed from December 27, 2024, through January 30, 2025. *Id*. Plaintiff claims he "was housed under cruel and unusual conditions of confinement (*e.g*., sleeping and eating surrounded by birds, cockroaches, and mice, refused clean clothing, outside recreation or fresh air, etc.)." *Id*.

Plaintiff further alleges that on January 9, 2025, while still in segregation, he was served with a false conduct report that Defendant Lindsey backdated to December 6, 2024, three weeks prior to the date he was placed in segregation for refusing to become an informant. *Id*. at 14. It appears the conduct report at issue charged Plaintiff with attempting to obtain contraband via phone or email communication. *Id*. at 15.

Plaintiff alleges that on January 13, 2025, he had a Rules Infraction Board (RIB) hearing, at which time Defendants Barnes and Roush refused to allow him to speak on his own behalf or present a defense to the allegations, "depriving him of Due Process and Equal Protection." *Id*. at 14. According to Plaintiff, Barnes and Roush relied on an "investigator's packet" that was not made available to him, and therefore, he could not "rebut this 'evidence' or present a defense." *Id*. Plaintiff states he was found guilty of violating Rule 14.2, which prohibits the use of telephone, mail, or electronic devices in furtherance of any criminal activity, even though there was no evidence of his guilt and no evidence that he intended to violate any institutional rule. *Id*. at 15.

On January 13, 2025, Plaintiff filed an appeal of the RIB decision to the warden, and it was summarily denied. *Id*. at 16. Plaintiff then appealed to the Office of Chief Legal Counsel. Defendant Brown denied that appeal. *Id*.

Plaintiff asserts he has suffered injury to his reputation as a result of the false conduct report and the publication of the disposition of the Rules Infraction Board. *Id*. As a result of the RIB decision, Plaintiff lost his job as a health aide at an ODRC hospital, was placed on a six-month commissary and electronics restriction, and was placed in limited privilege housing upon his arrival at TCI. *Id*. at 16. Plaintiff alleges that the RIB disposition also recommended that a security review be conducted, which resulted in a security classification increase that made him ineligible to earn future good time credits. *Id*.

Finally, Plaintiff contends that once at TCI, Defendant Wise, the Director of Recovery Services, removed him from Continuing Care recovery services, finding that programming insufficient to meet Plaintiff's needs in light of the RIB decision. Plaintiff alleges his removal from this programming has resulted in the continuing loss of "good day" credits that he is no longer eligible to earn. *Id*. at 17.

Plaintiff brings his claims under 42 U.S.C. § 1983. He asserts a First Amendment retaliation claim against Defendants Lindsey and Doe, Fourteenth Amendment due process and equal protection claims against all Defendants, an Eighth Amendment conditions of confinement claim against Defendant Lindsey, and state law claims for defamation and intentional infliction of emotional distress against Defendants Lindsey, Barnes, and Rousch. *Id*. at 17-18. Plaintiff seeks declaratory and injunctive relief, as well as money damages. Specifically, and in addition to money damages, Plaintiff seeks immediate expungement of the false conduct report, injunctive relief directing Defendants to return him to level two security status, injunctive relief that grants him all of the "good days" he would have been able to earn if not for the false conduct report and denial of due process, and injunctive relief directing Defendants to rehire him as a health aide. *Id*. at 18-19. Plaintiff contends he "loses five 'good days' a month while the false conduct report and findings remain on his record." *Id*. at 17.

### III.    DISCUSSION

At this stage of the proceedings, without the benefit of an answer or other briefing, the undersigned concludes that Plaintiff's claims against Defendant Lindsey under the First Amendment for retaliation and the Eighth Amendment regarding his conditions of confinement may **PROCEED** to further development. The undersigned advises Plaintiff that this is only a preliminary determination, and the undersigned has not made a determination as to the merits of

6

the claims being allowed to proceed, nor has the undersigned considered any potential defenses. Defendant Lindsey is not precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g., Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

### A. Official capacity claims

The Complaint should be dismissed as to all Defendants in their official capacities to the extent Plaintiff seeks monetary damages which are barred by the Eleventh Amendment to the United States Constitution. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). "While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (cleaned up). Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989)). Plaintiff's claims here against Defendants in their official capacities are the same as claims against the State of Ohio.

Claims for damages against the State of Ohio are barred by the Eleventh Amendment, which "denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent." *Maben*, 887 F.3d at 270 (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)). "The [United States Supreme] Court has held that, absent a waiver by the State or valid congressional override, the Eleventh Amendment bars a damages

7

action against a State in federal court." *Maben*, 887 F.3d. at 270 (quoting *Graham*, 473 U.S. at 169). Here, "because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983," the State of Ohio has immunity for claims against it. *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citing *Ohio v. Madeline Marie Nursing Homes # 1 & # 2*, 694 F.2d 449, 460 (6th Cir. 1984) and *Giles v. Univ. of Toledo*, 478 F. Supp. 2d 924, 960-61 (N.D. Ohio 2007)). This immunity "extends to state officials sued in their official capacity" for monetary damages, such as is pursued here. *Smith v. DeWine*, 476 F. Supp. 3d at 650-51. Accordingly, Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed.

### B. Allegations against Defendant John Doe

The allegations against Defendant John Doe are inadequate to state a claim for relief. A plaintiff suing several defendants must describe in the complaint how each defendant violated his rights. "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege . . . facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at * 6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012). *See also Williams v. Hodge*, No. 3:08-0387, 2009

8

WL 47141, at *3 (M.D. Tenn. Jan. 7, 2009) ("It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 for alleged constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct.").

Here, the only mention of Defendant Doe in the Complaint is that he was present during Plaintiff's interactions with Defendant Lindsey, and the conclusory assertion that "Lindsey and Doe had a meeting of the minds that resulted in a conspiracy to retaliate against Mr. King for the protected conduct of refusing to inform on drug activity and asserting that he would be filing a grievance against Lindsey and Doe for discrimination and harassment." (Doc. #1-2, *PageID* #13, ¶ 17). However, there is no allegation that Defendant Doe personally took any action against Plaintiff. Because the Complaint lacks sufficient allegations that Defendant Doe was personally involved in the events, there is no plausible claim stated, and any claim against Defendant Doe should be dismissed. *Hodge*, 2009 WL 47141, at *3.

### C. Equal Protection claim

Plaintiff has not alleged sufficient facts that plausibly suggest his equal protection rights were violated. Although unprofessional and deplorable, the use of racially derogatory language, standing alone, does not give rise to a constitutional claim. *See, e.g.*, *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (holding state correction officer's use of racial slurs and derogatory language did not rise to level of an Eighth Amendment violation); *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (Moore, J., concurring in part and dissenting in part) ("The use of a racial epithet by itself is not an actionable violation of the Equal Protection Clause."); *Jones v. Porter*, No. 99-1326, 2000 WL 572059 at *2 (6th Cir. May 1, 2000) (holding prison official's use of racial slur does not give rise to a Fourteenth Amendment equal-protection claim).

9

Here, Plaintiff does not allege accompanying facts that might allow the derogatory comment to state an equal protection claim. Therefore, the undersigned recommends Plaintiff's Fourteenth Amendment equal protection claim be dismissed.

### D. Procedural due process claims

Plaintiff's claim regarding the deprivation of his Fourteenth Amendment right to procedural due process in connection with his RIB hearing fails to state a claim upon which relief may be granted. Plaintiff challenges the procedures employed by Defendants during his RIB hearing, arguing that because he was not provided with a copy of the evidence against him or the investigator's packet, he was unable to present a defense to the allegations. (Doc. #1-2, *PageID* #14). But the Fourteenth Amendment's Due Process Clause "protects individuals against the deprivation of life, liberty, or property without due process. '[T]hose who seek to invoke its procedural protections must establish that one of these interests is at stake.'" *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *2 (6th Cir. July 28, 2022) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). It is well settled that convicted prisoners "have narrower liberty interests than other citizens as 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). And "[a] prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Damron*, 2022 WL 4587625, at *2 (quoting *Sandin*, 515 U.S. at 484, 487).

Here, Plaintiff alleges that as a result of the conduct report and RIB disposition, he spent about a month in segregation, lost his job as a health aide, was placed in limited privilege housing upon his arrival to TCI, was placed on commissary and package restriction, and his security classification was reviewed and increased, making him ineligible to earn *future* good time credits. (Doc. #1-2, *PageID* #16).  Plaintiff does not have a protected liberty interest under the circumstances alleged.

Although a deprivation of accumulated sentence credits could operate to extend the period of a plaintiff's confinement and therefore could implicate a constitutionally protected liberty interest, the loss of an *opportunity* to receive sentence credits in the future does not.  *See Gunn v. Civic*, No. 1:24-cv-00073, 2025 WL 350242, at *3 (M.D. Tenn. Jan. 30, 2025) (citing *Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002) (affirming dismissal of due process claim because "disciplinary board did not order the loss of accumulated good-time or sentence credits," and "the alleged collateral effect of the disciplinary conviction on his ability to earn *future* sentence credits is not sufficient to create a constitutionally protected liberty interest") (emphasis added)); *see also Peterson v. Holland*, No. 16-6121, 2017 WL 6853097, at *1-2 (6th Cir. July 7, 2017) (rejecting viability of procedural due process claim where disciplinary board did not "call[] for the withdrawal of good-time credits," but merely imposed punishment that "could keep [plaintiff] from getting a sentence reduction").

A plaintiff also does not have a liberty interest sufficient to implicate the Due Process Clause in a "housing assignment" or "prison employment or a particular prison job."  *See Carter v. Tucker*, 69 F. App'x 678, *1-2 (6th Cir. 2003).  Likewise, a plaintiff does not have a liberty interest sufficient to implicate the Due Process Clause in the loss of commissary privileges.  *See, e.g.*, *Thurman v. Crews*, No. 4:24-cv-P63-JHM, 2024 WL 5172209, at *3 (W.D. Ky. Dec. 18,

2024) ("Plaintiff suffered only the loss of commissary privileges, which does not give rise to a protected liberty interest."); *Jackson v. Smith*, No. 3:19-cv-01133, 2020 WL 553729, at *3 (M.D. Tenn. Feb. 4, 2020) (commissary restrictions not an atypical and significant hardship in prison life); *Harris v. Farley*, No. 4:11-cv-0619, 2011 WL 2472806, at *2 (N.D. Ohio June 22, 2011) ("Petitioner suffered the potential loss of visitation and commissary privileges, neither of which qualify as a protected liberty interest.").

Finally, confinement to punitive segregation or an increased security classification also does not constitute an atypical and significant hardship. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification not an atypical and significant hardship because prisoners have "no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification"); *Smith v. Corrections Corp. of America*, 5 F. App'x 443, 444 (6th Cir. 2001) (thirty days placement in disciplinary segregation not atypical and significant hardship); *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (administrative segregation for two and a half years did not satisfy *Sandin*). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (holding that transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

For the foregoing reasons, the undersigned recommends that Plaintiff's procedural due process claims be dismissed against all Defendants. *Sandin*, 515 U.S. at 486.

### E. State law claims

To the extent that Plaintiff raises state law claims, such as defamation and intentional infliction of emotional distress, the Court should determine later in this proceeding whether to exercise supplemental jurisdiction over any state law claims.

## IV. CONCLUSION

### IT IS THEREFORE RECOMMENDED THAT:

1. The claims in Plaintiff's Complaint seeking money damages against any Defendant in his or her official capacity be **DISMISSED with prejudice**. 28 U.S.C. § 1915(e)(2)(B);

2. The Complaint be **DISMISSED** against Defendant John Doe because Plaintiff does not allege personal involvement by this Defendant;

3. Plaintiff's equal protection and due process claims be **DISMISSED** against all Defendants for failure to state a claim upon which relief may be granted; and

4. The Court should determine later in this proceeding whether to exercise supplemental jurisdiction over any state law claims.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff may **PROCEED** at this juncture on his First Amendment retaliation claim and his Eighth Amendment conditions of confinement claim against Defendant Lindsey.

2. The United States Marshal shall serve a copy of the Complaint, summons, and this Order and Report and Recommendation upon Defendant Lindsey as directed by Plaintiff, with costs of service to be advanced by the United States.

3. Plaintiff shall serve upon Defendant Lindsey or, if appearance has been entered by counsel, upon Defendant's attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendant or Defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or

which fails to include a certificate of service will be disregarded by the Court.

4. The Clerk of Court is **DIRECTED** to provide Plaintiff with a copy of the *Pro Se* Handbook.

5. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

July 28, 2025                                        *s/Peter B. Silvain, Jr.*
                                                                                Peter B. Silvain, Jr.
                                                                                United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).